UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL SHAVERS #378021,

        Plaintiff,                      Case No. 2:07-cv-173

v.                                            Honorable Robert Holmes Bell

DAVID BERGH, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

     I.     Factual allegations

Plaintiff Michael Shavers, an inmate at the Alger Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden David Bergh, Deputy Warden Lloyd Rapelje, Assistant Resident Unit Supervisor Denise Gerth, Resident Unit Manager Unknown McBurney, Captain Unknown Emmel, Corrections Officer Unknown Enterline, and Corrections Officer Unknown Stasewich. Plaintiff alleges in his complaint that on May 24, 2007, and May 25, 2007, Defendant Stasewich falsified major misconduct tickets on Plaintiff for threatening behavior, claiming that Plaintiff had threatened the lives of Defendant Stasewich's family.

Plaintiff alleges in his complaint that on May 26, 2007, while confined in administrative segregation, Plaintaiff was taken to the emergency room and treated for chest pains. Plaintiff was later released and returned to the prison with instructions for follow-up with health care on May 29, 2007.

On the morning of May 29, 2007, Defendants Enterline and Stasewich arrived at Plaintiff's cell to escort him to health services. Defendant Enterline placed the bellychain on Plaintiff through the cell door food slot and stated, "So, Shavers your old ass think its alright to threaten Stasewich and his family?" Plaintiff responded by stating that it was none of Defendant Enterline's business. While Plaintiff was being patted down, Defendant Enterline said, "So boy your fucking ass think you can get away with threatening Stasewich and his family?" Plaintiff was then led away from his cell door with Defendant Enterline on his left side and Defendant Stasewich on

his right.  Defendant Stasewich then stated, "Yeah Motherfucker them damn threats your ass made behind that cell door about my family, you will pay for."

Plaintiff claims that Defendants Enterline and Stasewich had a reputation for throwing inmates to the floor on the pretext that the inmate had instigated the incident by either spitting on them or becoming loud and uncooperative.  Plaintiff feared that this was about to happen to him and turned to Defendant Stasewich, stating "you done wrote me them major misconduct tickets and you need to let that family shit go and don't forget that dam [sic] camera is going to catch any throw down move on me."  Defendant Stasewich indicated that it did not matter what Plaintiff said, because he was going to put Plaintiff on the floor.  Defendant Stasewich then attempted to grab Plaintiff by the right arm, but Plaintiff pulled it out of the way.  Defendant Enterline then grabbed onto Plaintiff's left arm and Defendant Stasewich was able to grab Plaintiff's right arm.  Defendants Enterline and Stasewich then forcibly led Plaintiff back to his cell, with Defendants McBurney and Emmel following behind.

Once they arrived at his cell, Defendants Enterline and Stasewich forced Plaintiff into his cell and attempted to close the door.  However, some paper stuck in the bottom of the door area prevented the door from closing completely.  While Defendants Enterline, McBurney, and Emmel were attempting to remove the paper from the bottom of the cell door, Defendant Stasewich reached through the door and struck Plaintiff in the neck.  Because the paper could not be immediately removed, Plaintiff was instructed to come out of his cell and stand in the middle of the hallway.  At this time Defendants Enterline, McBurney and Emmel continued to try to remove the paper, while Defendant Stasewich stood next to Plaintiff in the hallway.  Suddenly, Plaintiff began to experience

sharp pains in his chest and fell to the floor. Defendant Stasewich responded by pulling sharply on Plaintiff's belly chain.

The doctor was called to the unit, where Plaintiff explained the situation and complained of chest pain. The doctor told Plaintiff to get up and come downstairs to the clinic so that he could be examined. However, Defendants Enterline and Stasewich refused to allow Plaintiff to proceed to health care and Plaintiff was forced back into his cell, where he lay for several hours complaining of chest pain and shortness of breath. Plaintiff states that second shift came on at 2:00 p.m. and that he notified Corrections Officer Briggs of his chest pain. Approximately fifteen minutes later, Plaintiff was taken to the clinic and examined by a nurse. Later in the evening, Plaintiff began to suffer from neck and lower back pain. Plaintiff claims that the pain and stiffness had worsened by the next day and that he took over the counter medications throughout the day. The following day, the pain was even worse, so he submitted a health care kite and asked to see the doctor.

Plaintiff alleges that the doctor and nurse on duty deliberately failed to respond to his kite, and that he submitted a second kite on June 1, 2007. Plaintiff states that the nurse picked up his kite, but that he received no response. However, Plaintiff was scheduled to be seen on sick call on June 5, 2007. Plaintiff continued to take over the counter medications for his pain. The nurse failed to examine Plaintiff on June 5, 2007, as scheduled, so Plaintiff submitted another kite on June 6, 2007. Plaintiff was seen by a nurse on June 8, 2007, and was told to take over the counter medications for his pain. Plaintiff took over the counter medications until June 21, 2007, but his pain worsened, especially upon movement.

On June 21, 2007, Plaintiff submitted his fourth health care request regarding his back and neck pain, and was referred to see the doctor. On June 26, 2007, Plaintiff was seen by the

doctor, who refused to examine Plaintiff and told him that the pain was all in his head. On July 12, 2007, Plaintiff submitted a fifth health care request complaining of continued pain in his neck and back. On July 17, 2007, the doctor saw Plaintiff, but refused to examine his neck area. The doctor again told Plaintiff that the pain was all in his head. On July 30, 2007, Plaintiff submitted another health care request and was advised to purchase anti-inflammatory drugs from the prison store. Plaintiff continues to experience pain in his neck and back.

Plaintiff claims that Defendants Enterline and Stasewich have assaulted a number of other inmates in the past. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

## II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants Enterline and Stasewich used excessive force on him, causing injury to his neck and back and that Defendants McBurney and Emmel were present and failed to intervene. The Eighth Amendment embodies a constitutional limitation on the power of

the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Every malevolent touch by a prison guard does not give rise to an Eighth Amendment cause of action, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and the prisoner must allege that he sustained more than de minimis injury in order to state a viable excessive force claim. *See id.* at 9-10; *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (6th Cir. 1999) (en banc). As noted above, Plaintiff claims that he suffers from neck and back pain as a result of the alleged excessive force. However,

Plaintiff concedes that medical personnel did not find that he suffers from any significant physical injury. In fact, Plaintiff states that the doctor told him that his pain was all "in his head." Furthermore, because Plaintiff fails to allege or show more than a de minimis physical injury, his Eighth Amendment claim for mental anguish is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir.1999); *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *1 (6th Cir. June 7, 2001); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000).

Plaintiff fails to make specific factual allegations against Defendants Bergh, Rapelje, and Gerth. A claimed constitutional violation must be based upon active unconstitutional behavior. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Id.*; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has failed to demonstrate that Defendants Bergh, Rapelje, or Gerth engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated:   October 17, 2007

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).